WATSON, Judge:
 

 Defendant-Intervenor, the Zenith Radio Corporation (Zenith), has moved to dismiss this consolidated action for lack of subject matter jurisdiction. The motion is opposed by plaintiffs and by the defendant United States.
 

 The action was brought under Section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, (19 U.S.C. § 1516a(a)(2)(B)(iii)), by various importers and manufacturers of Japanese television receivers to challenge a determination made in 1981
 
 [1]
 
 by the United States International Trade Commission (ITC) that an industry in the United States would be threatened with material injury if the ITC were to modify or revoke an anti-dumping finding made in 1971.
 
 [2]
 
 The challenged determination was made following a review under section 751(b) of the Tariff Act of 1930, as added by section 101 of the Trade Agreements Act of 1979 (19 U.S.C. § 1675(b)). The original dumping finding was made under the Antidumping Act of 1921 (19 U.S.C. § 160 et seq. (1970)).
 
 [3]
 

 Although Zenith is in general agreement with the determination, it argues that the ITC has no authority to undertake a review under section 751(b) of determinations made under the Antidumping Act of 1921. In effect Zenith is arguing that, except for being subject to review on an annual basis to determine the amount of the antidumping duty under section 751(a), (19 U.S.C. § 1675(a)), the underlying determinations that there were sales at less than fair value and that injury resulted are forever unreviewable, unmodifiable and irrevocable.
 

 Zenith relies on a close reading of section 751 and a fine distinction between calling the final result of an antidumping investigation a “finding” under the Antidumping Act of 1921 and an “order” under the Trade Agreements Act of 1979.
 

 The relevant part of the section under discussion reads as follows:
 

 (a) Periodic review of amount of duty.—
 

 (1) In general — At least once during each 12-month period beginning on the anniversary of the date of publication of a countervailing duty order under this subtitle or under section 1303 of this title, an antidumping duty order under this subtitle or a finding under the Antidumping Act, 1921, or a notice of the suspension of an investigation, the administering authority, after publication of notice of such review in the Federal Register, shall—
 

 (A) review and determine the amount of any net subsidy,
 

 (B) review, and determine (in accordance with paragraph (2)), the amount of any antidumping duty, and
 

 (C) review the current status of, and compliance with, any agreement by reason of which an investigation was suspended, and review the amount of any net subsidy or margin of sales at
 
 *666
 
 less than fair value involved in the agreement,
 

 and shall publish the results of such review, together with notice of any duty to be assessed, estimated duty to be deposited, or investigation to be resumed in the Federal Register.
 

 (2) Determination of antidumping duties. — For the purpose of paragraph (1)(B), the administering authority shall determine—
 

 (A) the foreign market value and United States price of each entry of merchandise subject to the antidumping duty order and included within that determination, and
 

 (B) the amount, if any, by which the foreign market value of each such entry exceeds the United States price of the entry.
 

 The administering authority, without revealing confidential information, shall publish notice of the results of the determination of antidumping duties in the Federal Register, and that determination shall be the basis for the assessment of the antidumping duties on entries of the merchandise included within the determination and for deposits of estimated duties.
 

 (b) Reviews upon information or request.—
 

 (1) In general. — Whenever the administering authority or the Commission receives information concerning, or a request for the review of, an agreement accepted under section 1671c or 1673c of this title or an affirmative determination made under section 1671c(h)(2), 1671d(a), 1671d(b), 1673c(h)(2), 1673d(a), or 1673d(b) of this title, which shows changed circumstances sufficient to warrant a review of such determination, it shall conduct such a review after publishing notice of the review in the Federal Register. In reviewing its determination under section 1671c(h)(2) or 1673e(h)(2) of this title, the Commission shall consider whether, in the light of changed circumstances, an agreement accepted under section 1671c(c) or 1673c(c) of this title continues to eliminate completely the injurious effects of imports of the merchandise.
 

 (2) Limitation on period for review.— In the absence of good cause shown—
 

 (A) the Commission may not review a determination under section 1671d(b) or 1673d(b) of this title, and
 

 (B) the administering authority may not review a determination under section 1671d(a) or 1673d(a) of this title, or the suspension of an investigation suspended under section 1671c or 1673c of this title,
 

 less than 24 months after the date of publication of notice of that determination or suspension.
 

 (c) Revocation of countervailing duty order or antidumping duty order. — The administering authority may revoke, in whole or in part, a countervailing duty order or an antidumping duty order, or terminate a suspended investigation, after review under this section. Any such revocation or termination shall apply with respect to unliquidated entries of merchandise entered, or withdrawn from warehouse, for consumption on and after a date determined by the administering authority.
 

 Zenith points out that section 751(b), which allows a review of various agreements and determinations (including those of sales at less than fair value and injury) and section 751(c), which allows revocation or modification, make no specific mention of “findings” under the Antidumping Act of 1921. Zenith argues that Congress was aware of the distinction between “orders” and “findings.” This awareness, it asserts, is shown in section 751(a) which provides for annual review of the
 
 amount
 
 of duty and refers both to an antidumping duty “order” under the Trade Agreements Act and a “finding” under the Antidumping Act of 1921. In essence this is an argument which follows the maxim
 
 expressio unius est exclusio alterius.
 
 The specific mention of various agreements and determinations under the Trade Agreements Act in section 751(b) and the specific mention of “orders”
 
 *667
 
 in section 751(c) is taken to indicate an intention to exclude from review those determinations and “findings” made under the Antidumping Act.
 

 Although this interpretation of the statute has a certain scholastic ingenuity tq it, the Court finds that it does not represent the authentic legislative intention. The result reached by Zenith is at odds with the dominant factors in the statute and the legislative history. Moreover, in a larger context, it does not represent the most plausible reading of the statutory language.
 

 To begin with, a more straightforward and harmonious reading of the law commences with section 106(a) of the Trade Agreements Act of 1979.
 

 Sec. 106 CONFORMING CHANGES
 

 (a) Repeal of Old Law. — The Antidumping Act, 1921 (U.S.C. § 160 et seq.) is hereby repealed but findings in effect on the effective date of this Act, or issued pursuant to Court order in an action brought before that date, shall remain in effect, subject to review under section 751 of the Tariff Act of 1930.
 

 This section makes old law “findings” subject to review under section 751 without limitation. The review it refers to must cover the underlying less than fair value and injury determinations. This is so because the “finding” was nothing more than a public notice of both the determination of the Secretary of the Treasury that sales had been made at less than fair value and the determination by the Tariff Commission that injury had resulted to a United States industry.
 
 [4]
 
 The ascertainment of the amount of duty (the annual review of which is the only review acknowledged by Zenith) was something which arose
 
 after
 
 the “finding.” It is unlikely that Congress would have used the word “finding” in section 106(a) to describe the duty consequences of a finding and at the same time to exclude those underlying determinations which the word describes more directly, i.e., the determinations of sales at less than fair value and injury.
 

 In this light, the mention of “findings” in section 751(a) appears to be nothing more than a punctilious reference to insure the correct timing of the annual review of the amount of duty. This subsection requires that the amount of duty be reviewed and determined once during every 12-month period. If it fixed the beginning of the 12-month period only by reference to the anniversary date of the publication of an anti-dumping duty “order”, some confusion might arise over what would be the equivalent date for a matter concluded under the Antidumping Act of 1921, because the term “order” was not then in use. Thus “findings” were mentioned to avoid confusion over what event would be the “birth date” under the repealed Act. The parallelism between the “order” date under the Trade Agreements Act and the “finding” date under the Antidumping Act might not be certain otherwise. However, since the terminology for underlying determinations remained the same under both Acts, i.e., “less than fair value” and “injury,” there was no reason to specify in section 751(b) those determinations made under the repealed Act.
 

 In other words, “findings” was used in section 751(a) only to set a date. It is not even mentioned later in the same subsection (section 751(a)(2), (19 U.S.C. § 1675(a)(2)) when the details of the duty determination process are specifically directed only to “merchandise subject to the antidumping duty order.” It is clear that by means of the relation of section 106(a) to section 751 Congress intended that there be a consistent insertion of matters determined under the Antidumping Act of 1921 into the review provisions of section 751 without fur
 
 *668
 
 ther elaboration. Congress could conceivably have done what it did in section 106(a) and still made a restriction in section 751, but not without a far more explicit expression of its intent. The drastic result of restricting reviews of determinations made under the Antidumping Act of 1921 could not be done by inference or indirection.
 

 It may be that the legislative insertion of old law determinations into all the relevant review provisions was somewhat inartful. However, aside from being a more plausible view of the review provision in context, this interpretation has the important virtue of harmonizing the Act with one of the notable Trade Agreements it was intended to implement, i.e., The Agreement on Implementation of Article VI of the General Agreement on Tariffs and Trade (the Anti-dumping Code).
 

 Thus, in section 2(a) of the Trade Agreements Act of 1979 (19 U.S.C. § 2503(a)) Congress approved
 
 inter alia,
 
 the Agreement on Implementation of Article VI of the General Agreement on Tariffs and Trade (relating to antidumping measures).
 

 Article 9 of the Agreement provides as follows:
 

 Duration of Anti-Dumping duties
 

 1. An anti-dumping duty shall remain in force only as long as, and to the extent necessary to counteract dumping which is causing injury.
 

 2. The investigating authorities shall review the need for the continued imposition of the duty, where warranted, on their own initiative or if any interested party so requests and submits positive information substantiating the need for review.
 

 It is unreasonable to think that, in the very act of implementing such an agreement, Congress intended to drastically restrict the review of antidumping determinations made under the Antidumping Act of 1921. Nor could such a restriction conceivably have been made to perpetuate a conflicting provision of the Antidumping Act (one which was inconsistent with review) because no such provision existed. Indeed, if anything, the 1921 Act was amenable to the making of reviews. This view is supported by good indications that Congress was aware that the administrative agencies were making such reviews and were revoking findings under the 1921 Act,
 
 [5]
 
 that Congress acknowledged their authority to do so
 
 [6]
 
 and made the authority explicit in the Trade Agreements Act of 1979.
 

 Furthermore, Congress evinced a general intention to carry forward the anti-dumping law and its judicial and administrative precedents without substantive changes except as specifically noted.
 
 [7]
 
 Although the parallel may not be exact between the exercise of review authority and the formulation of precedent in the conventional sense of administrative interpretation of statutory terms, it belongs in the same constellation.
 

 Zenith has also sought support for its thesis from the fact that in section 104(b) of the Trade Agreements Act
 
 [8]
 
 Congress did
 
 *669
 
 enact a specific provision dealing with countervailing duty orders issued under section 303 of the Tariff Act of 1930 (19 U.S.C. § 1303). Zenith asserts that this serves to emphasize that Congress made a deliberate choice in not doing the same thing for anti-dumping “findings.” What this argument overlooks is the fact that section 104(b) was needed in order to introduce an injury determination into the continuation of old law countervailing duty orders because those orders, except as they related to articles which were free of duty, did not previously require an injury determination. See S.Rep.No.96 — 249, 96th Cong., 1st Sess. 106 (1979), U.S.Code Cong. & Admin.News 1979, p. 381. However, antidumping “findings”
 
 were
 
 based on injury determinations and it was therefore not necessary to insert that factor in the Trade Agreements Act. It follows that this special provision for old countervailing duty orders yields no inferences regarding Congressional intentions to limit the review of old antidumping findings.
 

 The arguments engendered by this motion also touch on some provisions of the Trade Agreements Act which have no direct involvement with reviews, namely, the provision in section 738 (19 U.S.C. § 1673(g)) for the payment of estimated antidumping duties and the provision in section 739 (19 U.S.C. § 1673(h)) stating the general authority of the appropriate customs officer to determine the antidumping duty. Both of these provisions refer only to merchandise subject to an antidumping order and do not make a direct reference to merchandise subject to a “finding” under the Antidumping Act of 1921. This led plaintiffs to argue the necessity of reading “findings” into sections 738 and 739 lest the importations of merchandise subject to “findings” escape the necessity of depositing estimated antidumping duties (a minor anomaly) or not be subject to the actual ascertainment of dumping margins (a major anomaly).
 

 The Court is not persuaded that the possible need for resolution of difficulties in other places in the statute or the method of resolution has any bearing one way or the other on the interpretation of section 751. It therefore does not discuss the complexities of Zenith’s opposing argument on this point. The solution to the difficulty in section 751 does not require a finding that Congress used the term “order” to include “findings.” Section 751(b) does not even use the term “order.” The inclusion of “findings” in section 751 comes about from the controlling effect of section 106(a). Beyond that, no specific mention of “findings” was needed in section 751. Indeed, had there been no reference whatsoever to “findings” in section 751(a) the inclusion of the constituent parts of “findings” in all the relevant parts of section 751 would have been even more apparent. Since the sole reference to “findings” has been found to have no implications beyond the timing of a review of the amount of duty, the result ought to be the same as if they had not been specifically mentioned at all. By the operation of section 106(a) and by the compelling force of the legislative intent embodied in the Act, the underlying determinations which resulted in “findings” are subject to review to the full extent of section 751.
 

 In sum, the Court finds that pursuant to the review provisions of section 751(b) of the Tariff Act of 1930, as added by section 101 of the Trade Agreements Act of 1979 (19 U.S.C. § 1675(b)) the ITC has the authority to review an injury determination underlying a dumping finding made under the Antidumping Act of 1921. The determination having been made in an authorized manner the resulting action for judicial review properly comes within the subject matter jurisdiction of the Court. Accordingly, the motion to dismiss will be denied and it is so Ordered.
 

 [1]
 

 .
 
 Television Receiving Sets from Japan,
 
 Inv. No. 751-TA-2. USITC Pub. 1153 (1981) 46 Fed. Reg. 37,702 (June 24, 1981).
 

 [2]
 

 . T.D. 71-76.
 

 [3]
 

 . The Trade Agreements Act of 1979 repealed the Antidumping Act of 1921 but essentially continued its provisions into a new Title VII of the Tariff Act of 1930.
 

 [4]
 

 . The duties of the Secretary of the Treasury in these matters were later transferred to the Secretary of Commerce pursuant to Reorg. Plan No. 3 of 1979, § 5(a)(1)(C), 44 Fed.Reg. 69275, 93 Stat. 1381, eff. Jan. 2, 1980, as provided by section l-107(a) of Ex.Ord.No.12188, January 2, 1980, 45 Fed.Reg. 993.
 

 The United States Tariff Commission was renamed the United States International Trade Commission in section 171 of the Trade Act of 1974, (19 U.S.C. § 2231).
 

 [5]
 

 .
 
 Northern Bleached Hardwood Kraft Pulp from Canada,
 
 T.C.Pub.No.687 (Sept.1974).
 

 Primary Lead Metal from Australia and Canada,
 
 Inv.Nos. AA1921-134 and 135, T.D. 74-127 and T.D. 74-128 were revoked in US1TC Pub. No. 772 (April 1976).
 

 [6]
 

 . S.Rep.No.93-1298, 93d Cong., 2d Sess. 181 (1974), U.S. Cong. & Admin.News 1974, p. 7186.
 

 [7]
 

 . S.Rep.No.96-249, 96th Cong., 1st Sess. 79 (1979), U.S.Code Cong. & Admin. News 1979, p. 381.
 

 [8]
 

 . (b) OTHER COUNTERVAILING DUTY ORDERS.—
 

 (1) REVIEW BY COMMISSION UPON REQUEST. — In the case of a countervailing duty order issued under section 303 of the Tariff Act of 1930 (19 U.S.C. 1303)—
 

 (A) which is not a countervailing duty order to which subsection (a) applies,
 

 (B) which applies to merchandise which is the product of a country under the Agreement, and
 

 (C) which is in effect on January 1, 1980, or which is issued pursuant to court order in an action brought under section 516(d) of that Act before that date,
 

 the Commission, upon the request of the government of such a country or of exporters accounting for a significant proportion of exports to the United States of merchandise
 
 *669
 
 which is covered by the order, submitted within 3 years after the effective date of title VII of the Tariff Act of 1930 shall make a determination under paragraph (2) of this subsection.